STATE, JACOB VANATTA, ALFRED MILLS, AND JOHN H. LIDGERWOOD, EXECUTORS OF STEPHEN VAIL, DECEASED, PROSECUTORS, v. RUNYON, COLLECTOR OF TAXES OF THE TOWNSHIP OF WASHINGTON, IN THE COUNTY OF MORRIS.

1. The act of April 17th, 1876, (*Rev.*, p. 1163,) which provides that no mortgage or debt secured thereby shall be assessed for taxation, unless a deduction therefor is claimed by the owner of the land, and allowed by the assessor, and that such mortgages or debts secured thereby, as shall be subject to taxation, shall be assessed for taxation in the township or city wherein the mortgaged premises are situate, is constitutional.

2. The act above mentioned merely provides a method for the taxation of mortgages. It is not in violation of paragraph twelve, section eleven, article four, of the amended constitution. It subjects all mortgage interests to taxation in common with other property, throughout the state, at the place where the mortgaged premises are situate, and merely leaves it in the volition of the mortgagor whether he will pay the tax for the mortgage interest, or have the same paid by the mortgagee. Nor is the act unconstitutional, as applied to prior mortgages, as impairing the obligation of the contract of the mortgagor with the mortgagee, with respect to the payment of taxes on the mortgaged premises.

3. The deduction of the mortgage debt from the valuation of the lands mortgaged may be allowed by the assessor, and the owner of the mortgage be assessed therefor, without the deduction being claimed by the owner of the lands, under oath.

4. The assessor may require an affidavit to satisfy himself of the existence and amount of the mortgage, and of the person by whom the

State, Vail's Executors, pros., v. Runyon.

same is held; but if the deduction is claimed, and is allowed, and the sum allowed is, in fact, the correct amount of the mortgage debt, and the owner of the mortgage is taxed only therefor, the latter cannot complain.

5. If property be such in its nature as to be capable of having a two-fold *situs* for taxation, the legislature may select either as the place where the tax shall be laid. The legislature may select as the *situs* of taxation of mortgages, either the political division where the owner resides, or that in which the mortgaged premises are situate.

6. A law which subjects a particular class of property to taxation in common with other property on the same valuations, and at the rates of taxation which are uniformly applied in this state in taxation for state purposes, and in the county and municipality in which the property is taxable in taxation for county and local purposes, observes the constitutional requirement of uniformity in the rules of taxation.

7. In the absence of some statutory requirement of notice, in a particular manner, to the individual taxed, of the assessment against him, notice of the time and place of meeting of the commissioners of appeal in cases of taxation, by advertisements set up according to the statute, (*Rev.*, p. 1142, § 8,) is sufficient notice of the assessment, and of the time and place for hearing objections, to make the imposition lawful.

8. An assessment of taxes made against one of several executors or trustees, for mortgages held by them in their fiduciary capacity, will not be set aside, though the assessor, in making his duplicate, omits to designate him in his representative capacity.

9. Assessments of taxes will not be set aside for mere irregularities or objections in form which do not affect the substantial rights of parties.

On *certiorari.* In matter of taxation.

This writ brings up an assessment of taxes for the year 1877. The reasons for reversal will appear from the opinion.

Argued at November Term, 1878, before Justices DALRIMPLE, DEPUE and SCUDDER.

For the prosecutors, *J. Vanatta.*

For the defendant, *H. C. Pitney.*

The opinion of the court was delivered by

DEPUE, J. The prosecutors, as executors and trustees under the will of Stephen Vail, deceased, were the holders of

two mortgages, bearing date March 25th, 1871, and April 1st, 1871, respectively, on lands situate in the township of Washington, in the county of Morris. The testator, at the time of his death, resided in the township of Morris, in the same county, and the prosecutors reside there. The owners of the lands mortgaged having claimed a deduction for the amounts of the mortgages, the assessor allowed the same and assessed the same against the mortgagees. The claim for the deduction was not made in either case in writing or under oath.

This assessment was made under the act of April 17th, 1876. *Rev.*, *p.* 1163. The first section of this act declares' that no mortgage or debt secured thereby shall be assessed for taxation, unless a deduction therefor shall have been claimed by the owner of the land, and allowed by the assessor. By the second section it is provided that such mortgages or debts secured thereby as shall be subject to taxation, shall be assessed for taxation by the assessor, making the deduction on account thereof, and the tax thereon shall be collected by the collector of taxes in or for the township or city wherein the lands in the mortgage described are situate. The remaining sections provide a mode for collecting such taxes from delinquents.

The liability of the owners of mortgages to taxation for mortgage money, did not originate in this act. Taxation for money secured by mortgage was imposed by the second and fourth sections of the act of April 11th, 1866. *Rev.*, *pp.* 1150, 1151. By the last-mentioned act the tax was assessed against the owner of the mortgage at the place of his residence. By the act of 1876 the place of taxation is made the township or city in which the mortgaged premises are situate.

Preliminary to the principal topics discussed by counsel, an objection for non-compliance with the act of 1876 was taken. It was contended that the deduction for the mortgage debt was improperly allowed, for the reason that the owner of the mortgaged premises did not make a claim therefor under oath. The act of 1876 does not expressly require the claim to be made upon oath. A claim for deduction made by the owner

of the land, and allowance thereof by the assessor, are the conditions prescribed by the act.

The twentieth section of the act of 1866, (*Rev.*, *p.* 1157, § 78,) which requires an oath or affirmation as a condition on which a deduction for debts shall be allowed, is not applicable to the method of taxation adopted by the act of 1876. The act of 1866 provides for the deduction of the entire indebtedness of the individual from the gross valuation of his real and personal estate, and requires the allowance of such deduction to be made only on his statement under oath of the total amount of his real and personal property, and of the residence of his creditors. The act of 1876 deals only with the mortgaged premises and the mortgages thereon. The owner of the mortgaged premises may reside in another township or county and be taxable there only for his personal estate, or may reside in another state, and not be taxable at all on his personalty in this state. In either of these cases the deduction of the mortgage debt from the gross amount of real and personal estate which is contemplated by the act of 1866, would be impracticable. Under the act of 1866 the deduction for debts secured by mortgage is to be made in the township in which the debtor resides, though the mortgage be upon lands in another township. *State, Shreve, pros.*, v. *Crosley*, 7 *Vroom* 425. Under the act of 1876 the deduction for the mortgage debt is to be made in the township where the mortgaged premises are situate, without regard to the place of residence of the mortgage debtor. *State, Cummins, pros.*, v. *Jones*, 11 *Vroom* 105; *State, King, pros.*, v. *Manning, Id.* 461. By the act of 1866 the allowance is to be made to the individual debtor; by the act of 1876 the deduction is to be made in favor of the owner of the lands who may have acquired title, subject to the mortgage, without any assumption of the mortgage debt.

The assessor may require an affidavit to satisfy himself of the existence and amount of the mortgage, and of the person by whom it is held. But if the deduction is claimed, and is allowed, and the sum allowed is, in fact, the correct amount

of the mortgage, and the owner of the mortgage is taxed only therefor, he cannot complain.

It is also objected that the assessment in the duplicate was made against Mr. Vanatta, one of the prosecutors, without designating him as executor or trustee. The loans were made by the prosecutors after the testator's death. The mortgages appear to have been in the custody of Mr. Vanatta. Under the general tax law, where a bond and mortgage is in the hands of one of several executors, he is taxable for it at his place of residence. State v. Jones, 10 Vroom 650. The seventh section of the statute which provides for taxation of executors, trustees and other persons who act in a representative capacity, simply declares that every person shall be assessed, &c., for all personal estate in his possession, or under his control as trustee, guardian, executor or administrator. Rev., p. 1153, § 66. An assessment of taxes against a trustee, guardian, executor or administrator, as an individual, would be in literal conformity with the language of this section; and this general statute on the subject of taxation has only been changed by the act of 1876, with respect to the place of taxation on mortgages. The person against whom such an assessment is made will be allowed for the tax paid as a disbursement by him in his fiduciary capacity. In the present case there is no ground for belief that there is not sufficient means of reimbursing the individual executor upon whom the tax was laid for what he may be compelled to pay, and if there were, his co-executors having joined in this writ of certiorari, this court, in awarding a mandamus to compel the payment of the tax, if necessary, may award it against all the prosecutors. The objection relates to a mere matter of form, and the precedents show that assessments of taxes will not be set aside for mere irregularities or formal objections which do not affect the substantial rights of parties. State v. Jersey City, 4 Zab. 108; State, Perkins, pros., v. Bishop, 5 Vroom 45; State, Paulison, pros., v. Taylor, 6 Vroom 184.

In the next place it was contended that the act of 1876 is inoperative and void, for the reason that it makes no provision for notice to the owner of the mortgage of the assessment

State, Vail's Executors, pros., v. Runyon.

against him; affording him no opportunity to be heard upon the legality of the assessment to which he is subjected.

The act of 1876 is a supplement to the general act concerning taxes, and the provisions contained in that act, and its several supplements, with respect to notice, apply to taxation under it. By the eighth section of the original act the commissioners of appeal in cases of taxation are required to convene on the fourth Tuesday of November, annually, for the purpose of hearing the complaints of persons thinking themselves aggrieved by the assessment of taxes against them; and by section ten the collector of the township is required to give notice of the time and place of such meeting, by advertisements set up in at least four of the most public places in the township. *Rev., p.* 1142. All parties are bound to take notice of the meeting of the commissioners at the day appointed by law for that purpose. *Nixon* v. *Ruple*, 1 *Vroom* 58. And, in the absence of evidence to the contrary, it will be presumed that the commissioners of appeal met according to law. *State* v. *Johnson*, 1 *Vroom* 452. A similar presumption arises with respect to the performance of his duty by the collector, with regard to notice of the time and place of their meeting.

Until a comparatively recent period, notice such as is directed by the sections of the general tax law, above referred to, was the only notice given of the laying of taxes; and it was always regarded as sufficient notification of the assessment, and as affording adequate opportunity for objections by those upon whom the tax was laid, to make its imposition lawful. *State* v. *Helmer*, 2 *Penna. St.* 1059. " It is not customary," says Chief Justice Cooley, " to provide that the tax payer shall be heard before the assessment is made, but a hearing is given afterwards, either before the assessors themselves, or before some court or board of review; and of the meeting of that court or board the tax payer must, in some manner, be informed, either by personal notice or by some general notice which is reasonably certain to reach him, or, which is equivalent, by some general law which fixes the time and place of meeting, and of which he must take notice. The

last is a common method of enabling him to be heard." *Cooley on Taxation* 266. Constructive notice, such as is above provided for, is in fact, at the present time, the only notice a non-resident receives of the assessment of taxes on lands, or on chattels which are taxable in the township in which they are located. Section eleven of the same act, and section twenty-eight of the supplement of 1866, provide for additional notice, either by personal service or by a notice left at the place of residence, but this latter requirement only arises in favor of individuals residing in the township. *Rev., pp.* 1142, 1159. If the prosecutor's views of the necessity of notice other than constructive notice, such as is above referred to, be correct, no legal assessment of taxes can be made in this state against the owner of real or personal property who happens to be a non-resident of the township in which the same is located. The counsel's contention on this ground is without foundation.

The remaining reasons discussed at the argument relate to the constitutionality of the taxation in question.

It was insisted that the act of 1876 is in violation of paragraph twelve, section eleven, of article four of the amended constitution, which requires property to be assessed for taxes under general laws and by uniform rules, according to its true value.

Independent of constitutional restrictions and prohibitions, the legislature is the sole judge of the propriety of taxation. It may select and define the sources from which the public revenue shall be derived, and prescribe the means by which taxes shall be laid, levied, and collected. Perfect equality in taxation is a good that is unattainable, and will be so long as the instruments of government are imperfect. The framers of the constitutional amendments did not aim at the impossible. They contented themselves with the accomplishment of so much of good as was attainable under the single requirement that " property shall be assessed for taxes under general laws and by uniform rules, according to its true value." In other respects, the legislative power over taxation was left unimpaired. If property be such in its nature as, upon ordinary

principles of taxation, to be capable of having a two-fold *situs* for taxation, the legislature may select either as the place where the tax shall be laid. Chattels considered under the legal classification of personalty, follow the person of the owner, and yet chattels may be so localized in use as to be taxable at the place where they are situate, as against the owner, who resides elsewhere within the state. *State* v. *Falkinburge*, 3 *Green* 320. A mortgage possesses the same dual characteristics. The debt of which the bond is the representative is a chose in action which has no locality, and will follow the residence of the owner. The mortgage, as security for the debt, is a conveyance of a qualified interest in the mortgaged premises, and creates an estate in lands. By the act of 1854, mortgages were taxed in the township or ward in which the mortgaged premises were situate; by the act of 1866, the place of taxation was changed to the residence of the mortgagee. The legislature may, I think, select, as the *situs* of taxation of mortgages, either the political division where the owner resides, or that in which the mortgaged premises are situate.

The act of 1876 is admitted to be a general law. It applies to the property which is within its purview throughout the state, without any exception or qualification as to locality. But it is denied that this act prescribes a uniform rule for taxation, according to value, within the meaning of the constitutional provision. A law which subjects property to taxation at the rates of taxation which are uniformly applied in the state, in taxation for state purposes, and in the county and municipality in which the property is taxable, in taxation for county and local purposes, observes the constitutional requirement of uniformity in the rules of taxation. In this respect, the act of 1876 is unobjectionable. It is entirely silent on the subject, and leaves the rate of taxation to depend on the rates to which all other property in the taxing locality is subject.

The precise objection made by counsel to this law, in this respect, is that it lacks the quality of uniformity, in that it

does not subject all mortgages alike to taxation, but leaves the question whether the owner of a mortgage shall submit to taxation on it, at the will or caprice of the mortgagor. If regard be had to the substance of the law, and not mere form, it is apparent that all mortgage interests are in effect made, by this act, liable to taxation. If the mortgagor chooses to pay that part of the tax which would be represented by the value of the interest of the mortgagee, he may do so. In that event, the mortgaged premises are valued without any abatement in valuation, because of the mortgage debt. If, on the other hand, the mortgagor is unwilling to pay that part of the tax which is apportionable to the mortgage interest, he may do so by claiming a deduction therefor, and, in that event, instead of taking a receipt for that portion of the tax, as he was permitted to do under the act of 1854, and being allowed the amount on account of the interest of the mortgage debt, (*Nix. Dig.*, ed. 1861, *p.* 851, § 64,) he may do so by simply claiming the deduction, and then the tax is laid, in form, directly upon the mortgagee. The act, in substance, simply, makes legal the payment of the tax on the mortgage debt, in addition to the interest, if the mortgagor is content to pay the same, and provides a convenient method for the expression of his intention on the subject, instead of permitting him to use the payment of taxes as a payment of the interest on the debt subsequently accruing, as he might have done under the act of 1854. *Cook* v. *Smith,* 1 *Vroom* 387, 394.

This, I think, was the whole legislative purpose of this act, and in this sense it cannot be regarded as a violation of the principle of uniformity in taxation established by this amendment. The object of this constitutional provision was the equalization of taxation in its relation to the several parts of the state, and the prevention of unjust discriminations in the apportionment of the public burdens among its citizens liable to taxation. The requirements of the constitutional provision relate to the essentials of a tax law which shall operate on citizens as tax payers *in invito.* They do not affect

the contracts, engagements or even the volition of individuals. A tenant's covenant to pay the taxes is valid and enforceable, though the general tax law requires the tax to be assessed upon the owner of the demised premises. It is presumed that, a contract of similar import between borrower and lender would be equally valid, if it be not obnoxious to the usury laws. And it is equally clear that the legislature may permit a tenant to pay the taxes upon the premises demised, although he has not covenanted to do so, or the mortgagor to pay the tax on the mortgage interest, and upon such voluntary payment deny a remedy over against the person primarily liable as for money voluntarily paid.

Another reason assigned under this head is, that the taxation in the present case was unconstitutional, in that it impaired the obligation of the contract between the mortgagor and his mortgagee.

The prosecutors' mortgages were both made and executed before the act of 1876 was passed. They contained the usual covenants for the payment of the mortgage debts, without any deduction for taxes or assessments.

Whatever may be the effect of such a covenant, as between the parties, its obligations will not affect the state in the exercise of the sovereign power of taxation. The fact that lands are under lease to a tenant who has covenanted to pay the taxes, will not prevent the tax from being assessed to and collected from the owner. *State* v. *Blundell*, 4 *Zab.* 402. A tax upon the landlord, under such circumstances, would not impair the contract of the tenant to pay the taxes. The contract, as between the parties to it, would remain unimpaired, and complete remedy might be had thereon to enforce its obligation, though the landlord, as between him and the public, was compelled, in the first instance, to make payment of the taxes. In *Cook* v. *Smith*, 1 *Vroom* 387, the plaintiff's mortgage was dated in 1847. The mortgagee resided in the town of Belvidere, and the mortgaged premises lay in the township of Oxford. The mortgage contained a covenant for the payment of the mortgage debt, without any deduction for taxes

or assessments, in the same language as is contained in the prosecutors' mortgages. A tax law subsequently passed in 1854, provided that where the mortgagee did not reside in the same township or county where the mortgaged premises lie, the tax on the money secured by the mortgage should be assessed against and be paid by the mortgagor in the township where the lands lie, and the receipt of the collector should be a legal payment of so much of the interest of the mortgage, and be allowed and deducted therefrom by the mortgagee. *Nix. Dig.*, (*ed.* 1861,) *p.* 851, § 64. In an action on the bond the mortgagor claimed, as a set-off against the interest subsequently accrued, allowance for the taxes he had paid under the last-mentioned act. The court charged the jury that the tax law of 1854, having been passed after the plaintiff's mortgage was given, impaired the obligation of the contract therein on the subject of taxes, and was inoperative and void. But this court overruled this instruction, and held that the act of 1854 provided simply a method of taxation of the mortgage, and was not illegal as impairing the contract between the parties. The case just cited is directly in point. It fully sustains the doctrine applicable to this case, that contracts between parties for the payment of taxes *inter sese*, will not control the state in the exercise of the sovereign power of taxation as public policy may require.

The assessment is affirmed.